## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

DOROTHY JEAN BOLDUC,                )
                                    )
              Plaintiff             )
                                    )
v.                                  )          Civil No. 09-220-B-W
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
              Defendant             )

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal contends that the administrative law judge erred in failing to find that her bipolar disorder was a severe impairment. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from mild bilateral carpal tunnel syndrome and thoracic outlet syndrome, impairments that were severe but did not, whether considered separately or together, meet or medically equal the criteria of any impairment included in Appendix 1 to Subpart P, 20 C.F.R. Part 404 (the "Listings"), Findings

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) & 1383(c). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 18, 2009, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

4-5, Record at 15-30 and Record Supplement at [1]-[4]; that she had the residual functional capacity ("RFC") to perform light work, except that she had to avoid frequent overhead work, the use of vibrating tools, constant handling, crawling, exposure to unprotected heights, exposure to moving machinery, and the climbing of ladders, ropes, and scaffolds, Finding 6, *id*. at 30; that she was capable of performing her past relevant work as a flagger, cashier, sales clerk in a department store, and hostess in a restaurant, Finding 7, *id*. at 34; and that she, therefore, had not been under a disability, as that term is defined in the Social Security Act, at any time from August 1, 2003, the alleged date of onset, through the date of the decision, June 27, 2008, Finding 8, *id*.   The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner.  20 C.F.R. §§ 404.981, 416.1481, *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 4 of the sequential process, at which stage the claimant bears the burden of proof of inability to return to past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20

C.F.R. §§ 404.1520(f), 416.1520(f); Social Security Ruling 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982 ("SSR 82-62"), at 813.

The plaintiff's appeal, however, implicates Step 2 of the sequential process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28).

## I.  Discussion

### A.  Bipolar Disease

The plaintiff contends that the administrative law judge should have found at Step 2 that her bipolar disease was a serious impairment. Itemized Statement of Errors Pursuant to Local Rule 16.3 ("Itemized Statement") (Docket No. 6) at 2. Specifically, she relies on a letter from her treating psychiatric nurse practitioner. *Id*. at 3.

The administrative law judge devotes six pages of single-spaced type to the plaintiff's claims about her bipolar disease and the medical evidence of that disease. Record at 11-17, 22-26 and Record Supplement at [1]-[3]. The plaintiff asserts that her case must be remanded because the administrative law judge failed to mention the letter from the nurse practitioner. Itemized Statement at 3. That letter is dated April 29, 2008. Record at 939. The portion of the administrative law judge's analysis closest to that in time is the following:

The claimant continued to be diagnosed as suffering from a bipolar disorder, in partial remission (Exhibit 23F), into 2006. In early 2006 she reported that she had started school and was taking four classes (Exhibit 23F). Her symptoms waxed and waned somewhat (Exhibits 23F and 12F), but by **July, 2006** (Exhibit 31F), she was denying problems with anxiety, irritability, shakiness, restlessness, depression, mania and medication side effects. Her speech was clear and linear, with no pressure, flight of ideas or thought blocking. Her mood was euthymic. Her affect was bright, broad in range and appropriate. Her thought processes were logical, linear and goal directed. She denied psychotic symptoms. Her memory and concentration were grossly intact. Her insight was good. Her judgment was good. She had good control over her impulsivity (Exhibit 31F). She was sleeping eight hours per day (Exhibit 12F). She reported that, "I'm doing good" (Exhibit 12F). She described her mood as "great" (Exhibits 30F and 12F). Nevertheless, in connection with her applications, she alleged in **August, 2006** (Exhibits 6E and 8E) that she needed reminders to take medications; that she was engaging in improvident spending; and that her mental impairment adversely affected her ability to remember, to complete tasks, to concentrate, to understand, to follow instructions, to get along with others, to face other people, to remember spoken instructions, to maintain her interests and to pay attention for more than one-half hour at a time.

By June, 2007 (Exhibit 31F) the claimant's bipolar disorder was in *full remission* and it remained in remission thereafter. Although her counselor regularly recorded her global assessment of functioning as being less than 50, in spite of the remission, her medical records make it clear that the assessments were based almost entirely upon *social and economic factors* (Exhibit 31F).

The state agency psychologists who reviewed the claimant's medical records at the request of the Social Security Administration consistently concluded that she did not suffer from any severe mental impairment or combination of impairments (Exhibits 8F, 27F and 11F). They further concluded that the claimant could be expected to experience only mild restrictions of her activities of daily living; that she could be expected to have only mild difficulties in maintaining social functioning; that she could be expected to have only mild difficulties in maintaining concentration, persistence or pace; and that the persistence was not sufficient to justify a conclusion that she could be expected to have repeated episodes of decompensation, of extended duration (Exhibit 27F and 11F). I agree with the state agency psychologists conclusions in the foregoing regards, and I find them to be fully consistent with the objective medical evidence referred to above.

4

Record Supplement at [2]-[3] (emphases in original).

The letter upon which the plaintiff relies, directed to the plaintiff's attorney, states in its entirety:

> I, Janet Zalanskas, Psychiatric Nurse Practitioner, have been working with Dorothy "Dot" since 8/24/2005. She is diagnosed with Bipolar I Disorder, Most recent episode Mixed Severe without Psychotic features. It was very difficult to stabilize Dot's mood with medications. In 4/2006, when she worked for Woodlands, she struggled even more with mood instability, which I believe may have been because of the stress of working. In 4/2006, she reported feeling depressed, anxious and psychotic symptoms, and also explained that the auditory hallucinations yell at her when feeling stressed at work. Since she stopped working in 1/2007, she reported improved mood stability continuously until today's visit, 4/25/2008. She is currently experiencing mood worsening, since she had to discontinue her medicine due to side effects and pregnancy.

Letter dated April 25, 2008, from Janet Zalanakas, NP[2] to George M. Jabar, II (Record at 939).

The administrative law judge referred to Zalanakas's treatment notes (Exhibits 23F and 31F, *id.* at 671-735, 806-43) in his analysis. This makes it less remarkable that he failed to mention her letter, written after a single visit with the plaintiff at her attorney's request, shortly before her scheduled May 6, 2008, hearing before the administrative law judge. *Id.* at 12. The letter itself supports the administrative law judge's analysis with the exception of the final sentence, which discusses severity only in very general terms and refers to a "current" worsening, first reported that day, which clearly does not establish that the bipolar disease had become severe for a period of 12 months, as required by applicable regulations. 20 C.F.R. §§ 404.1509, 416.909. In addition, Zalanakas's notes were available, from all that appears, to at least one of the state-agency psychologists on whose conclusions the administrative law judge explicitly relied. *Id.* at 764.

---

[2] A nurse practitioner is not an acceptable medical source under Social Security regulations, 20 C.F.R. §§ 404.1513(a), 416.913(a), and Zalanakas's opinions, therefore, may not be used to establish the existence of an impairment, but may be considered as evidence of the severity of an impairment, once its existence is established, *id.* §§ 404.1513(d), 416.913(d).

Under these circumstances, the administrative law judge's failure to mention Zalanakas's letter is harmless error, if it is error at all.[3]

## B.  Global Assessment of Functioning

The plaintiff also contends that the administrative law judge's assertion that the low global assessment of functioning ratings were based "almost entirely on social and economic factors (Exhibit 31F)" is "demonstrably incorrect."  Itemized Statement at 3.  Even if it is true that "occupational problems are considered as significant as economic problems, and more significant than social problems[,]" *id*. at 4, in the ratings assigned by Zalanakas and other mental health professionals whose notes make up Exhibit 31F, that correction would not require the administrative law judge to change his evaluation of the plaintiff's bipolar disorder.  The opinion presents many reasons, in addition to the global assessment of functioning scores, for the administrative law judge's rejection of the plaintiff's claim that her bipolar disorder was continuously severe during the time between her alleged onset date, August 1, 2003, Record at 12, and the date of the decision, June 27, 2008, *id*. at 35.

## C.  "In Full Remission"

Finally, the plaintiff takes issue with her own treating professional's statement, *id*. at 807, that her bipolar disorder was "in full remission."  Itemized Statement at 4.  She asserts that "[i]n context, it appears that the 'in full remission' label relates to the extreme mood swings of Bipolar Disorder."  *Id*.  In order to reach this conclusion, the administrative law judge would have to

---

[3] At oral argument, counsel for the plaintiff contended that, if the administrative law judge erred in failing to find a particular impairment to be severe at Step 2, remand would always be required, as "the rest of the process is invalid once an error is made at Step 2."  This assertion is contrary to the established law in this district, where an error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.  *See, e.g., Ahearn v. Astrue*, No. 06-94-B-W, 2007 WL 951562 (D. Me. Mar. 27, 2007), at *3-*4 (and cases cited therein); *Laffely v. Barnhart*, No. 04-273-P-C, 2005 WL 1923515 (D. Me. Aug. 9, 2005), at *6 (appeal handled by plaintiff's counsel in the instant case); *McLaughlin v. Barnhart*, No. 04-129-B-W, 2005 WL 1421870 (D. Me. May 24, 2005), at *3.  Even if the administrative law judge had erred at Step 2 with respect to the plaintiff's bipolar disorder, therefore, her failure to show that such an error was not harmless would require this court to affirm the commissioner's ultimate decision.

engage in the evaluation of raw medical data that is forbidden by Social Security law.  *Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990).  The administrative law judge was entitled to rely on Zalanakas's conclusion, as set out in her treatment notes.

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen(14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 29th day of December, 2009.

<u>/s/  John H. Rich III</u>
John H. Rich III
United States Magistrate Judge